Filed 6/11/26  P. v. Reyes CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085690 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD305226) |
| JAMIEL ZOLAYVAR REYES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

Mytili G. Bala for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Jamiel Zolayvar Reyes appeals from a judgment following his convictions on two counts of assault by means likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4).  He contends the trial court erred (1) in not sua sponte instructing the jury on the lesser included offense of simple assault; and (2) in using an instruction for the greater offense that he says was ambiguous.  Finding no error, we affirm.

1

# I.  BACKGROUND

On the afternoon of October 13, 2024, two incidents occurred that bore a similarity to one another.  In the first incident, a man riding a trolley was suddenly and unexpectedly struck twice in the head by a stranger sitting in the seat behind him.  In the second incident, a man sitting at a table outside a library likewise was suddenly and unexpectedly struck in the head by a stranger.  In each incident the assailant was holding a metal lock, described as a padlock, in the hand used to strike the victim and a butter knife in the other hand.  And in both instances the assailant drew blood.

Each victim sustained injuries that might reasonably be characterized as more than minimal or moderate.  For example:  the first victim described the first blow he sustained as "quite painful" and the second blow as forceful enough that it knocked a pair of glasses off his face; the second victim described the pain at the time of the blow *he* sustained as a nine on a scale of one to ten; each victim sought care at a hospital (with one arriving by ambulance); one of the victims was administered an MRI; and the other was treated with adhesive and a bandage that remained on his scalp for two to three weeks.

But, these circumstances notwithstanding, each victim and a librarian at the scene of the second incident also described the victims' injuries in less severe terms.  Thus, for example:  the first victim described the punch to his face as "not that serious;" the second victim told the librarian that his injury "was minor;" the librarian described the bleeding as "minimal;" neither victim required stitches; and each of the victims appears to have departed the hospital on the same day he arrived there.

Two days after the incidents, police arrested Reyes in connection with the trolley incident.  In a search of a bag he was carrying, they found a lock

and a pair of butter knives matching video footage from the trolley. Thereafter, while reviewing video footage from the library, they realized that the clothes worn and bag carried by the suspect in the library incident matched the clothes worn and bag carried by the suspect in the trolley incident.

Reyes was charged with two counts of violating Penal Code section 245, subdivision (a)(4), and was tried in a single trial on both counts. During the proceedings, the trial court noted that the defense had not requested an instruction on the lesser included offense of simple assault, and the following exchange ensued:

> "The Court: I see that there are not any LIO's. I don't know if you're going to be asking for simple assault?
>
> "[Defense Counsel]: I'm going to elect not to request LIO's."

Following testimony from six witnesses, the trial court instructed the jury. So doing, it included an instruction on assault by means likely to produce great bodily injury, but did not include an instruction on simple assault. The instruction on assault by means likely to produce great bodily injury was modeled after CALCRIM No. 875, as follows:

> "[The Court:] The defendant is charged in Counts 1 and 2 with assault with force likely to produce great bodily injury, in violation of Penal Code Section 245(a)(4).
>
> "To prove that the defendant is guilty of this crime, the People must prove that [1A] the defendant did an act that, by its nature, would directly and probably result in the application of force to a person, and [1B] the force used was likely to produce great bodily injury; [2] the defendant did that act willfully; [3] when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone; and

3

[4] when the defendant acted, he had the present ability to apply force likely to produce great bodily injury to a person.

"[¶ . . . ¶]

" 'Great bodily injury' means significant or substantial physical injury. It is injury that is greater than minor or moderate harm."

Thereafter, in closing arguments, Reyes's defense counsel focused nearly exclusively on element 1B and the definition of great bodily injury. So doing, she argued:

"[A]s you heard from the judge, and you heard in the prosecutor's closing, there are four elements in this case. And I'm going to focus your attention on 1B, 'The force used was likely to produce great bodily injury.' You'll see it here in your verdict form. . . . And you'll see [it] isn't just assault. It's . . . required . . . [to be] by means likely to produce great bodily injury. That's a choice by the government to choose that specific count. That specific charge.

"[¶ . . . ¶]

"Members of the jury, the way the victims describe the injuries themselves falls into the category of minor. And in the most generous version of the evidence presented by the prosecution, it would be moderate. Which does not rise to the level of substantial or significant great bodily injury that's required for this case.

"[¶ . . . ¶]

"In this case, there are two reasonable theories, one that Mr. Reyes punched with force not likely to cause great bodily injury, and one that Mr. Reyes punched a person with force likely to cause great bodily injury."

4

As noted *ante*, the jury returned a verdict of guilty on both counts of assault by means likely to produce great bodily injury. Reyes timely appealed.

## II.    DISCUSSION

Reyes contends the trial court committed instructional error: (1) in not sua sponte instructing the jury on the lesser included offense of simple assault; and (2) in using an instruction—CALCRIM No. 875—that he says was ambiguous. "We review claims of instructional error de novo." (*People v. Richee* (2025) 111 Cal.App.5th 281, 292.)

## A.    Instruction as to Lesser Included Offense

Reyes's first contention is that the trial court erred in not sua sponte instructing the jury on the lesser included offense of simple assault. This argument implicates what is often referred to as the sua sponte instructional rule. Pursuant to this rule, "a trial court must instruct on an uncharged offense that is less serious than, and included in, a charged greater offense, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged greater offense are present." (*People v. Huggins* (2006) 38 Cal.4th 175, 215.)

Among the cases most closely associated with this rule is *People v. Breverman* (1998) 19 Cal.4th 142, the case in which our Supreme Court first coined the phrase by which the rule has come to be known. As Justice Baxter explained in the majority opinion in that case:

> "[T]he sua sponte instructional rule . . . prevents the 'strategy, ignorance, or mistakes' of either party from presenting the jury with an 'unwarranted all-or-nothing choice,' encourages 'a verdict . . . no harsher or more lenient than the evidence merits' [citation] and thus protects the jury's 'truth-ascertainment function' [citation].

> "[T]he rule seeks the most accurate possible judgment by 'ensur[ing] that the jury will consider the full range of possible verdicts' included in the charge, regardless of the parties' wishes or tactics. [Citation.] The inference is that every lesser included offense, or theory thereof, which is supported by the evidence must be presented to the jury."

(*Id.,* at p. 155, italics omitted; see also *People v. Hicks* (2017) 4 Cal.5th 203, 210 [noting "that an all-or-nothing choice encourages a high-risk, high-reward gambler's approach to criminal justice" and "that ' "[o]ur courts are not gambling halls but forums for the discovery of truth" ' "].)

But the sua sponte instructional rule is not without exceptions, and one of those exceptions is the invited error doctrine. "The doctrine of invited error 'is an "application of the estoppel principle" ' and applies when a party invites the court or the jury to commit error." (*People v. Midell* (2025) 113 Cal.App.5th 1060, 1072; accord *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 (*Norgart*).) "Under this doctrine, ' "when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error." ' " (*Midell,* at p. 1072.) In order for the doctrine to apply, " '[t]he record must show only that counsel made a conscious, deliberate tactical choice' " when she invited the court or the jury to commit the error. (*Midell,* at p. 1073.)

In the circumstances of the present case, we agree with Reyes that the trial court had a sua sponte duty to instruct the jury on the lesser included offense of simple assault because a reasonable jury could have found that the bodily injury likely to be produced by Reyes's conduct was no more than "minor or moderate" within the meaning of Penal Code section 245, subdivision (a)(4), and CALCRIM No. 875. But we agree with the Attorney General that the invited error doctrine applies because it is evident that Reyes's trial counsel's election to forego an instruction on the lesser included

6

offense of simple assault ("I'm going to elect not to request LIO's") was a conscious, deliberate tactical choice.

Arguing to the contrary, Reyes contends: (1) that we must not presume this election was tactical and (2) that, even if it were tactical, the trial court should have ascertained from Reyes whether he agreed with the election. For the reasons discussed below, we reject each of these arguments.

In contending that we must not presume his defense counsel's election was tactical, Reyes cites *People v. Walker* (2015) 237 Cal.App.4th 111, 119 (*Walker*) and *People v. Wickersham* (1982) 32 Cal.3d 307, 335 (*Wickersham*) for the proposition that "[t]he mere existence of a possible tactical purpose for acquiescing to omission of a lesser included instruction does not suffice" because, "[i]f this were the test, 'then invited error would be found wherever the accused had a tactical reason not to seek a necessarily included instruction. Since there is always a tactical reason not to want a necessarily included offense as an alternative—namely, to force the jury to an all-or-nothing choice—all situations would fit under that rule.' "

But we do not presume that Reyes's defense counsel made a tactical election. That tactical election is clear from the record before us. His counsel responded to the court's specific inquiry as to whether Reyes was requesting the simple assault instruction with the statement, "I'm going to elect not to request LIO's." By contrast, in *Walker*, defense counsel did not make an affirmative objection to the lesser included instruction, but instead merely mistakenly acquiesced in the court's analysis as to why such an instruction should not be made. The court concluded that such acquiescence was insufficient to constitute invited error, even if there could have been a possible tactical purpose for not requesting the instruction. As stated in *Walker*, "[a]n express tactical objection is required before a failure to instruct

7

on a lesser included offense may be found to have been 'invited' " and nothing in the record demonstrated such an objection. (*Walker*, 237 Cal.App.4th at p. 119). *See also Wickersham*, *supra,* 32 Cal.3d at p. 336 ("The error was not invited inasmuch as trial counsel did not make an express tactical objection to the required instructions.") By contrast, here, Reyes's counsel made such an "express tactical" objection.

Beyond counsel's express objection to the instruction, defense counsel's reliance on an all-or-nothing defense to the exclusion of all other defenses makes clear that the decision was tactical. Reyes argues that his trial counsel "did not rely solely on an all-or-nothing strategy; she also challenged the credibility of the complaining witnesses given their failure to previously identify appellant." It is true that Reyes's trial counsel briefly touched on the topic of identification while cross-examining the victims. But, thereafter, she conceded that identification was not in issue when she asserted, in her closing argument, that the decision confronting the jury boiled down to a binary choice between two competing theories, each of which was premised on Reyes having been the assailant.

As for the contention that the trial court should have queried Reyes as to whether he agreed with his counsel's stated election to forego an instruction on simple assault, Reyes concedes that "[t]his inquiry is not currently required" under California law; "but," he argues, "it should be."

Reyes is correct that California law does not require a trial court to make such an inquiry. Indeed, as he acknowledges in his opening brief:

> "In *People v. Cooper* (1991) 53 Cal.3d 771, the California Supreme Court held that invited error does not depend on whether trial counsel adequately advised the defendant of the ramifications of waiving an instruction on a lesser included offense. (*Id.* at p. 827.) Under *Cooper*, it is of no moment that the trial court did not ask appellant if he

8

agreed with his counsel's election to forego a lesser included instruction."

Reyes argues, however, that the United States Supreme Court's subsequent opinion in *McCoy v. Louisiana* (2018) 584 U.S. 414 (*McCoy*) requires that *Cooper* be revisited.

*McCoy* is but one case in a large body of case law addressed to the matter of how decisionmaking authority in criminal proceedings is to be allocated as between the defendant and his counsel. Commenting on that body of law, one respected authority has accurately observed that it reveals "general agreement . . . that the decisions as to guilty plea, jury trial, appeal, defendant's presence at trial, and the defendant testifying are for the defendant, and that decisions on a substantially larger group of matters . . . are for counsel." (3 LaFave et al., Criminal Procedure (4th ed., 2025) The Right to Counsel: Counsel's Control Over Defense Strategy, "Strategic" vs. "Personal" Decisions § 11.6(a).) But among decisions as to which "[l]ower courts . . . are divided" is the decision "whether to pursue an 'all or nothing' defense by waiving the right to a jury instruction on lesser included offenses." (*Ibid.*)

We have reviewed *McCoy* and other cases comprising this body of case law and discern no basis on which to conclude that *People v. Cooper* (1991) 53 Cal.3d 771 has been overruled. Implicit in *Cooper* is a conclusion by our state's Supreme Court that the decision to forego an instruction on a lesser included offense is among the category of decisions that are reserved to counsel, rather than those that are the province of the defendant. (*Cooper,* at p. 827.) *McCoy* recognizes the uncontroversial concept that some decisions— "notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forego an appeal"—"are reserved for the client" (*McCoy, supra,* 584 U.S. at p. 422, and it adds to this list the decision whether to

9

admit guilt. (*Id.,* at pp. 417, 421–428 ["We hold that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experience-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty."].) But it does not speak directly to the matter of who, as between the defendant and his defense counsel, gets to decide whether to waive the right to a jury instruction on a lesser included offense, and its reasoning does not compel a conclusion that that decision must be the province of the defendant. Hence we cannot agree with Reyes's contention that the position of the California Supreme Court in *Cooper* is no longer tenable after *McCoy*.

Because his trial counsel's election to forego an instruction on simple assault was a deliberate tactical decision, the invited error doctrine estops Reyes on appeal from contending that the court erred in not giving that instruction. (*Norgart, supra*, 21 Cal.4th at p. 403 [the purpose of the invited error doctrine is to "prevent a party from misleading the trial court and then profiting therefrom in the appellate court"].)

## B.    CALCRIM No. 875

Reyes's second contention is that the trial court's use of CALCRIM No. 875 constituted error because, he says, CALCRIM No. 875 is ambiguous. This contention is premised on a case—*People v. Medellin* (2020) 45 Cal.App.5th 519 (*Medellin*)—in which a divided panel of the Fifth District Court of Appeal examined the implications of a prosecutor's flawed explanation, during closing arguments, of the standard set forth in CALCRIM No. 875. During his closing argument in that case, the prosecutor invoked the statement in CALCRIM No. 875 that " '[g]reat bodily injury' means . . . injury that is greater than minor or moderate harm" and then incorrectly told the jury: "An injury that is greater than minor. That is all I

10

need to prove." (*Medellin,* at p. 531.) The Fifth District concluded that this statement prejudiced the defendant because it generated a reasonable likelihood that the jury understood or applied the great bodily injury standard in a manner that was improper or erroneous. (*Id.,* at p. 536).

Shortly after *Medellin* was decided, two other panels of the Fifth District reviewed the same instructional language and concluded it was not ambiguous. (*People v. Sandoval* (2020) 50 Cal.App.5th 357, 361 [" 'a jury instruction cannot be judged on the basis of one or two phrases plucked out of context' "]; *People v. Quinonez* (2020) 46 Cal.App.5th 457, 465–467.) More recently, a panel of *this* court analyzed *Medellin*, *Sandoval*, and *Quinonez*. (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 901–904 (*Caparrotta*).) In keeping with the *Sandoval* and *Quinonez* opinions and the opinion of the concurring and dissenting justice in *Medellin*, Justice Irion wrote for the unanimous panel that the language in issue is not ambiguous:

> "When read as a whole and in context, the definition of great bodily harm . . . is neither erroneous nor ambiguous. The instruction 'clearly informed jurors that great bodily [harm] meant significant or substantial physical injury, i.e., injury that was greater than moderate harm.' [Citation.] Therefore, [the] challenge to [the instruction[1]] is without merit."

(*Caparrotta, supra,* 103 Cal.App.5th at p. 904.) We embrace Justice Irion's well-reasoned analysis.

Unlike *Medellin*, the present case does not involve a situation in which an unambiguous standard was rendered ambiguous by a faulty argument. Hence *Medellin* is inapposite. The challenged language in CALCRIM No. 875 is not ambiguous, and the trial court did not err in using it.

---

[1] The instruction placed at issue in *Caparrotta* was CALCRIM No. 830, not CALCRIM No. 845; however the pertinent language in the two instructions is identical.

11

## III.    DISPOSITION

The judgment is affirmed.


                                                                KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.